## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE BANCORP BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     20 C 1841 |
| | ) |
| METROPOLITAN DIAGNOSTIC | ) |
| IMAGING, INC; HATTI GROUP RE, LLC; | ) |
| HATTI GROUP RE CHICAGO, LLC; | ) |
| CORELINQ INNOVATIONS, LLC; | ) |
| CORELINQ VENTURES, LLC; IMAGEN | ) |
| CHIGAO CORP.; HARSHA HATTI; | ) |
| UNITED DIAGNOSTIC PROVIDERS, | ) |
| LLC; and MOQUEET SYED, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Plaintiff The Bancorp Bank's ("Bancorp") Motion for

Summary Judgment on its breach of contract claims as asserted against Defendants

Hatti Group RE, LLC ("Hatti LLC"), Hatti Group RE Chicago, LLC ("Hatti Chicago

LLC"), Corelinq Innovations, LLC ("Corelinq Innovations"), Corelinq Ventures, LLC

("Corelinq Ventures"), Imagen Chicago Corp. ("Imagen"), and Harsha Hatti (together,

Hatti Defendants"), as well as Metropolitan Diagnostic Imaging, Inc.

("Metropolitan").[1]  For the reasons stated below, Bancorp's Motion is granted.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The following facts are taken from the record and are undisputed unless otherwise noted.[2]

On or about February 6, 2017, Bancorp and Metropolitan entered into a loan agreement ("Loan Agreement").  Pursuant to the Loan Agreement, Bancorp agreed to extend a loan to Metropolitan in the principal amount of $1,100,000 ("Loan").  In return for the Loan, Metropolitan executed a U.S. Small Business Administration Note ("Note") promising to pay Bancorp $1,100,000 plus interest on the unpaid principal balance and all other amounts required by the Note.  The interest rate applicable to the Loan is WSJ Prime plus 2.5%, meaning that, as provided in the Note:

> The interest rate on this Note will fluctuate.  The initial interest rate is 6.25% per year.  This initial rate is the Prime Rate in effect on the first business day of the month [(as published in the Wall Street Journal newspaper)] in which SBA received the loan application, plus 2.50%.  The

---

[1]  This Motion was not brought against Defendant United Diagnostic Providers, LLC or Defendant Moqueet Syed.

[2]  The Hatti Defendants did not file a response to Bancorp's statement of material facts as required by Local Rule 56.1.(b)(2).  Therefore, all facts in Bancorp's statement are deemed admitted as to the Hatti Defendants.  *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005) ("[F]ailure to properly meet the requirements to deny a moving party's statement of facts results in the moving party's version of the facts being deemed admitted.") (citation omitted).  Metropolitan attempts to dispute only four of Bancorp's asserted facts, which are addressed individually herein.  All other facts are deemed admitted as to Metropolitan.  *See id*.  Neither the Hatti Defendants nor Metropolitan filed a statement of additional material facts pursuant to Local Rule 56.1(b)(3).

initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10. . . . The interest rate will be adjusted every calendar quarter (the "change period").

Dkt. # 66, ¶ 21.

In connection with the Loan Agreement and Note, "for value received", Metropolitan also executed a U.S. Small Business Administration Security Agreement ("Security Agreement") granting Bancorp a security interest in Metropolitan's equipment, fixtures, inventory, accounts, instruments, chattel paper, and general intangibles ("Collateral").

On February 6, 2017, in consideration for the Loan and in order to induce Bancorp to enter into the Loan Agreement, each of the following defendants unconditionally guaranteed payment to Bancorp of all amounts owing under the Note: Hatti LLC, Hatti Chicago LLC, Metropolitan's President Harsha Hatti (individually), Corelinq Innovations, Corelinq Ventures, and Imagen (collectively, "Guarantees").

Pursuant to the Note, Metropolitan agreed to make one payment of interest one month from the date of the Note and to "pay principal and interest payments of $12,350.81 every month, beginning two months from the month this Note is dated; payments must be made on the fifth calendar day in the months they are due." *Id*., ¶ 22. If any payment on the Note is more than 10 days late, Bancorp may charge a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

Under the terms of the Loan Agreement and Note, failure and/or refusal to make timely payments is an event of default. Filing a petition for bankruptcy is also an event of default. The Loan Agreement provides:

> Upon the occurrence of an Event of Default . . . [Bancorp] may, at its sole option and without notice: accelerate all amount outstanding on the Note or any other indebtedness owed by Metropolitan to Bancorp and demand payment in full in immediately available funds; foreclose any security interest of Lender, or take such other actions available under the terms of this Loan Agreement, the Loan Documents or any other documents delivered pursuant hereto or in connection herewith; or take such actions as may otherwise be available in equity or in law.

*Id.*, ¶ 25. As used in the Loan Agreement, "Loan Documents" is a defined term which includes, *inter alia*, the Loan Agreement, the Note, the Security Agreement, and the Guarantees.

The Loan Agreement also provides that:

> No right or remedy, by this Loan Agreement, the Loan Documents or by any document or instrument delivered by Borrower or Guarantor pursuant hereto . . . shall be or is intended to be exclusive of any other right or remedy, and each and every right or remedy shall be cumulative and in addition to any other right or remedy now or hereafter existing at law or in equity or by statute.

*Id.*, ¶ 26; Dkt. # 66-1, at 11.

The Note provides that following default, Bancorp may "require immediate payment of all amounts owing under this Note" and "[c]ollect all amounts owing from any Borrower or Guarantor." Dkt. # 66, ¶ 27. Pursuant to the Note, Bancorp may exercise its rights on default "[w]ithout notice or demand and without giving up any of its rights[.]" *Id.*, ¶ 28. Furthermore, "Lender may exercise any of its rights separately

4

or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them." *Id*.

Pursuant to the Note, without notice and without Metropolitan's consent, Bancorp may:

> Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance.

*Id*., ¶ 29.[3]

The Security Agreement requires that "Debtor must: (a) maintain Collateral in good condition" and "[i]n the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party." *Id*., ¶ 30. Under the Security Agreement:

> Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located. Unless otherwise required under

---

[3] Metropolitan admits this fact "but only if the expense incurred is reasonable." Dkt. # 69, at 1. Per the text of the Note, only "attorney's fees and costs" must be "reasonable" and Metropolitan does not explain why the Note would be read differently. Metropolitan points only to a paragraph of the Affidavit of Moqueet Syed discussing the "validity" of a specific inspection charge, which will be discussed *infra*. Because Metropolitan does not raise a dispute of fact regarding the text of the Note, this fact is deemed admitted. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (". . . the nonmovant must cite specific evidentiary materials justifying the denial. If the cited material does not clearly create a genuine dispute over the movant's allegedly undisputed fact, the nonmovant should provide an explanation.").

applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

*Id.*, ¶ 31.

Every one of the Guarantees remains in effect until the Note is paid in full. Pursuant to the Guarantees, "Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor." *Id.*, ¶ 33. The Guarantees also provide that "Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any collateral." *Id.*, ¶ 34. Pursuant to the Guarantees:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

. . .

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
. . .
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
. . .
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

*Id.*, ¶ 35.  Furthermore, each "Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs." *Id.*, ¶ 36.

On February 8, 2017, Bancorp disbursed $1,100,000 from Metropolitan's loan account, to Metropolitan and/or for Metropolitan's benefit.  Metropolitan's initial interest only payment posted to its loan account on March 15, 2017, and Metropolitan began making its regular monthly payments in April 2017.

Metropolitan failed to remit any payment during the months of July 2017 and November 2017.  On November 16, 2017, Bancorp accelerated the indebtedness and made written demand on Metropolitan and the Guarantors for all amounts due under the Note ("Demand").  Neither Metropolitan nor the Hatti Defendants paid the Note in response to the Demand.

On November 28, 2017, Metropolitan filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  From January 2018 to June 2018, Bancorp received monthly adequate protection payments in the amount of $10,000 per month on the amount owed under the Loan and the Note.

On July 25, 2018, Metropolitan moved to dismiss its bankruptcy case because it could not propose a feasible Plan of Reorganization.  On the same day, the U.S. Bankruptcy Court for the Northern District of Illinois dismissed Metropolitan's case.

On November 5, 2018, Bancorp mailed correspondence ("Second Demand") to Metropolitan and all Guarantors, reiterating its demand for payment of the full amount

7

due under the Note. Despite the Second Demand, Metropolitan did not pay the amount due under the Note. The Hatti Defendants as Guarantors also failed to pay the amount due under the Note.

Bancorp perfected its security interest in the Collateral by filing UCC-1 financing statements. On November 13, 2020, Bancorp mailed a notice of disposition of collateral ("Notice of Disposition") to Metropolitan and all Guarantors. The Notice of Disposition indicated Bancorp would "sell or lease or license, as applicable" the collateral listed in Exhibit 1 to the Notice of Disposition ("Wabash Collateral") on or after December 4, 2020, at 5:00 p.m. CST. The Wabash Collateral included, for example, an MRI system, a mammography system, and a PET/CT scanner, as well as other office and medical support equipment such as monitors, an X-ray viewer, printers, a refrigerator, and doctor trays.

On December 4, 2020, Bancorp sold the Wabash Collateral at a public, online auction via the website BidSpotter.com and auctioneer Solid Resources, LLC. The Wabash Collateral was offered for sale as one "bulk bid" and as individual lot numbers 2 through 13. Due to the size and the cost of moving the Wabash Collateral, Bancorp sold the Wabash Collateral *in situ*, at Metropolitan's address (111 N. Wabash, Ste. 620, Chicago, Illinois 60602) where the Wabash Collateral was located at all times since February 2017.

By way of the auction, NINMPS, LLC purchased the Wabash Collateral as a bulk bid for $20,000, plus auctioneer's premium. Following the auction, NINMPS,

8

LLC and its principal, Mr. Rajeev Batra, failed to pay the purchase price within the time stated in the Sales Terms and Conditions. Following notification from Bancorp that failure to pay forfeited the purchaser's rights to the Wabash Collateral, NINMPS, LLC agreed to pay an additional $5,000 to cure the sale default and finalize transfer of the Wabash Collateral. The sale of the Wabash Collateral occurred in a manner and at a price consistent with the practices of the relevant industry.

Additional Collateral, consisting of an MRI machine, was located at 1332 42nd Street, Chicago, Illinois ("Hyde Park Collateral"). Bancorp's appraiser inspected the Hyde Park Collateral, and Bancorp learned the Hyde Park Collateral had been devalued due to lack of continuous power to the equipment and removal of machine components.[4] As a result of the reduction in value, the appraiser estimated that the proceeds likely to be realized from an auction sale of the Hyde Park Collateral would be less than the expenses incident to operation of any such auction sale.

On October 6, 2021, Bancorp mailed another Notice of Disposition of Collateral ("October 2021 Notice of Disposition") to Metropolitan and all Guarantors. The October 2021 Notice of Disposition indicated Bancorp would sell or lease or license, as applicable, the Hyde Park Collateral on or after October 21, 2021, at 5:00 p.m. CST by private sale. On or after 5:00 p.m. on October 21, 2021, Bancorp sold the Hyde Park Collateral, *in situ* and as is, for $5,000. Bancorp did not move or take possession of the

---

[4] Metropolitan seeks to dispute this fact, which will be discussed *infra*.

Hyde Park Collateral, and the Hyde Park Collateral remained in the possession of Metropolitan's landlord.  The sale of the Hyde Park Collateral occurred in a manner and at a price consistent with the general practice of the relevant industry.

As of November 5, 2018, the date of the Second Demand, the outstanding principal owed on the Note totaled $1,056,429.42.  Neither Metropolitan nor the Guarantors have made any payments on the Note since November 5, 2018.

In exchange for the sale of the Wabash Collateral, Bancorp received $25,000 less auctioneers' fees, for a total of $18,919.98, which was credited to Metropolitan's loan account.

As of September 8, 2021, after the sale of the Wabash Collateral, the outstanding principal owed on the Note totaled $1,037,509.44.  After deducting the proceeds of the sale of the Hyde Park Collateral, the outstanding principal owed on the Note is $1,032,509.44.

As of September 8, 2021, the outstanding interest owed on the Note equaled $236,416.46.  Continuing on each day after September 8, 2021, up to and including November 15, 2021, interest accrued on the Note at a per diem rate of $163.44, so that as of November 15, 2021, the outstanding interest owed on the Note equaled $247,530.38.  After the proceeds of sale of the Hyde Park Collateral were applied to the Note on November 15, 2021, the per diem interest rate fell to $162.66.  Interest will continue to accrue on the Note at a rate of $162.66 per day for every day after

November 15, 2021, to the earlier of (a) the date of judgment or (b) expiration of the current calendar quarter and adjustment of the interest rate.

Metropolitan failed to timely pay the July 2017, September 2017, October 2017, and November 2017 installment payments on the Loan. With each installment payment still unpaid, Bancorp imposed late charges of $617.54 to Metropolitan's account on July 15, 2017, September 15, 2017, October 15, 2017, and November 15, 2017, respectively. All four charges remain unpaid.

Bancorp incurred expenses to collect amounts due under the Note, to enforce the terms of the Note and Loan Documents, and to preserve and dispose of the Collateral, including:

a) UCC Searches 11/24/2017: $146.79

b) Site/Appraisal 2/09/2018: $2,150.00

c) Site/Appraisal 8/03/2018: $1,975.00

d) UCC Search 8/28/2019: $49.86

e) Site/Appraisal 9/26/2019: $1,800.00

f) Site/Appraisal 10/06/2020: $1,550.00

g) UCC Searches 11/06/2020: $35.17

h) Site/Appraisal 2/23/2021: $1,550.00[5]

---

[5] Of the listed expenses, Metropolitan seeks to dispute (h) only, which will be discussed *infra*.

Dkt. # 66, ¶ 68.  Bancorp also incurred attorney's fees and costs protecting its rights and enforcing its remedies under the Loan Documents.

Bancorp incurred the following damages as a result of Metropolitan's breach of the Note and the Hatti Defendants' breach of the Guarantees:

a)  Outstanding Principal: $1,032,509.44

b)  Incurred Interest: $247,530.38 plus $162.66 for every day from November 16, 2021, to the date of judgment[6]

c)  Late Fees: $2,470.16

d)  Incurred Fees: $9,256.82 (not including attorney's fees and court costs)

e)  Attorney's fees and court costs in an amount to be proved by Fee Petition and attorney affidavit.

Dkt. # 66, ¶ 70.

By the express terms of the Guarantees and to the extent allowed by law, the Guarantor waives defenses based upon any claim that:

1.  Lender failed to obtain any guarantee;

2.  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3.  Lender or others improperly valued or inspected the Collateral;

4.  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5.  Lender impaired the Collateral;

---

[6]  Metropolitan seeks to dispute only that the incurred interest totals $247,530.38, which will be discussed *infra.*

6. Lender did not dispose of any of the Collateral;

7. Lender did not conduct a commercially reasonable sale;

8. Lender did not obtain the fair market value of the Collateral

. . .

11. Lender made errors or omissions in Loan Documents or administration of the Loan;

12. Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13. Lender impaired Guarantor's suretyship rights;

. . .

15. Borrower avoided liability on the Note; or

16. Lender has taken an action allowed under the Note, this Guarantee, or other Loan Document.

Dkt. # 66, ¶ 72.

Bancorp filed its Complaint on March 17, 2020, alleging: (1) breach of contract against Metropolitan; (2) breach of corporate guaranty against Hatti LLC, Hatti Chicago LLC, Corelinq Innovations, Corelinq Ventures, and Imagen; (3) breach of individual guaranty against Harsha Hatti; and (4) replevin against Metropolitan, United, and Moqueet Syed. Bancorp now moves for summary judgment on its breach of contract claims asserted in Counts I, II, and III.

13

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary

judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The party opposing the motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(1), (3).

"A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec*, 191 F.R.D. at 584. Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). If a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact,

and the fact is admitted. *See Graziano*, 401 F. Supp. 2d at 936. Similarly, if a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585.

## DISCUSSION

To succeed on a breach of contract claim under Illinois law, a plaintiff must ultimately prove that: (1) a valid contract existed; (2) the plaintiff performed the conditions precedent required by the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of the breach. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020).

### I.    Metropolitan

It is undisputed that Metropolitan breached its contract with Bancorp. Metropolitan does not contend that Bancorp failed to prove any of the four factors required to prove a breach of contract claim, and admits that it breached its contractual obligations under the Loan Documents. *See* Dkt. # 68, ¶ 5 ("Based upon the review of the loan documents and materials submitted by Plaintiff Bancorp in support of it[s] motion, Metropolitan agrees that Metropolitan has defaulted in making the payments

required under the loan documents."). Summary judgment is therefore granted in Bancorp's favor on Count I for breach of contract against Metropolitan.

We next turn to the damages incurred by Bancorp in connection with Metropolitan's breach of contract. Damages can be determined at the summary judgment stage "[i]f all the material issues of fact underlying a claim, including the amount of damages, are established." *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 795–96 (7th Cir. 2014) (cleaned up).

Metropolitan only disputes how much Bancorp was damaged by Metropolitan's breach. Metropolitan agrees with the majority of Bancorp's damages calculations. Metropolitan "agrees that the principal amount of the Bancorp loan that is unpaid is $1,032,509.44." Dkt. # 68, ¶ 4. Metropolitan does not dispute the late fees ($2,470.16), incurred fees ($9,256.82), or that Metropolitan is entitled to "Attorney['s] Fees and Court Costs in an amount to be proved by Fee Petition and attorney affidavit." Metropolitan attempts to dispute only the amount of interest owed. Dkt. # 66, ¶ 70.

Bancorp asserts that the "incurred interest" is equal to $247,530.38 (which Metropolitan disputes), plus $162.66 for every day from November 16, 2021 to the date of judgment (which Metropolitan does not dispute). As supporting evidence, Bancorp cites the Affidavit of Nicholas Lesniak, the "SBL Portfolio Officer" of Bancorp who "has access to or supervision over" Bancorp's books and records regarding Defendants' "loan history, indebtedness, and collateral" and who has "directed, participated in,

17

and/or managed the collection efforts of Bancorp" with respect to the Defendants. Dkt. # 66-3, at 35–48 ("Lesniak Affidavit"). Specifically, Lesniak attests:

> As of September 8, 2021, the outstanding interest owed on the Note equaled $236,416.46. Continuing on each day after September 8, 2021 to an including November 15, 2021, interest continued to accrue on the Note at a per diem rate of $163.44, so that as of November 15, 2021 the outstanding interest owed on the Note equaled $247,530.38.

*Id*. at 45.

Metropolitan asserts that it "does not agree" that $247,530.38 is an accurate calculation for two reasons: (1) "there is no calculation offered as to how the payments of $60,000.00 Bancorp received from Metropolitan, as adequate protection payments during the chapter XI proceedings of Metropolitan, between principal and interest was made"; and (2) "there is no explanation of how the sum of $236,416.46 in interest accrued as of September 8, 2021, as stated in the [Lesniak Affidavit], was computed. [] The assertion in [the Lesniak Affidavit] as to the amount of accrued interest is a conclusion." Dkt. # 68, ¶ 6.

These arguments are insufficient to defeat summary judgment. As noted *supra*, Metropolitan only attempted to dispute four of Bancorp's 72 facts contained in its Statement of Material Facts. All others are deemed admitted as to Metropolitan. Significantly, Metropolitan did not dispute paragraph 63 of Bancorp's Statement of Material Facts, which restates the paragraph of the Lesniak Affidavit reproduced above. In other words, it is undisputed that the outstanding interest owed is equal to $247,530.38.

18

Even if Metropolitan hadn't left paragraph 63 undisputed and we look solely at their attempt to dispute the portion of paragraph 70(b) stating that incurred interest is $247,530.38, Metropolitan's "disagreement" with the interest calculation cannot defeat summary judgment. *See Bordelon*, 811 F.3d at 989 ("Conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."). Metropolitan points only to the Syed Affidavit to controvert Bancorp's interest calculation. Syed states that "there is no calculation offered as to how the allocation" of payments that Bancorp received from Metropolitan during the bankruptcy proceedings was made, and that "there is no explanation of how" the interest was computed. Dkt. # 68, ¶ 6. But merely suggesting that Bancorp's calculation *could be* wrong is not sufficient to establish that it *is* wrong. Metropolitan does not come forward with record evidence from which a reasonable jury could conclude that Bancorp's calculation in incorrect. They neither suggest an alternative sum of interest owed nor offer a method of calculation that they assert *is* accurate. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 985 (7th Cir. 2020) ("[I]f the opponent of summary judgment offers 'only speculation or conjecture' that raises a 'metaphysical doubt,' then there is no job for a fact-finder to perform."). Metropolitan's purely argumentative responses do not raise a triable issue of fact as to the accrued interest.

Metropolitan also agrees with the majority of Bancorp's calculation of expenses that it incurred "to collect amounts due under the Note, to enforce the terms of the Note and Loan Documents, and to preserve and dispose of the Collateral[.]" Dkt. # 66, ¶ 68.

Metropolitan only attempts to dispute the asserted 2/23/2021 site/appraisal charge of $1,550. Metropolitan does not dispute the 11/24/2017 UCC searches ($146.79), the 2/09/2018 site/appraisal ($2,150), the 8/03/2018 site/appraisal ($1,975), the 8/28/2019 UCC search ($49.86), the 9/26/2019 site/appraisal ($1,800), the 10/06/2020 site/appraisal ($1,550), or the 11/06/2020 UCC searches ($35.17). *See* Dkt. # 68, at 3 ("Metropolitan agrees that the remaining expenses . . . are valid charges against Metropolitan's account.").

Metropolitan states that it "does not agree that the invoice in the amount of $1,550.00 identified in paragraph 55(h) of the affidavit of Nick Lesniak is valid." *Id*., at 2. It continues:

> Metropolitan's President, Moqueet Syed[,] was present during this inspection which took place at Metropolitan's Hyde Park location. The inspector did not make a careful inspection of the open MRI machine and did not even turn it on, even though the opportunity to do so was offered to him. The inspector also later asserted that a major component of the open MRI machine was removed, but this was not accurate.

*Id*., at 2–3. In support, Metropolitan cites paragraph 8 of the Syed Affidavit, which is nearly identical:

> Defendant Metropolitan does not agree that the invoice in the amount of $1,550.00 identified in paragraph 55(h) of the affidavit of Nick Lesniak is valid. I was present during this inspection which took place at Metropolitan's Hyde Park location in February of 2021. The inspector was at the Hyde Park office for approximately ten minutes. He did not make a careful inspection of the open MRI machine and did not even turn it on, even though the opportunity to do so was offered to him. The inspector also later asserted that a major component of the MRI machine was removed, but this was not accurate.

*Id.*, at 5.

The 2/23/21 site/appraisal expense was a charge for "Appraisal Services" including a "[s]ite visit and appraisal of Machinery & Equipment." Dkt # 66-3, at 60. The paragraph of Moqueet Syed's affidavit that Metropolitan cites does not contest that it cost $1,550 to conduct the appraisal. Syed only contests the appraiser's conclusions. That Metropolitan disagrees with the results of the appraisal says nothing about whether the appraiser charged Bancorp $1,550 to perform it, or whether the appraisal was necessary in order to collect amounts due under the Note, to enforce the terms of the Note and Loan Documents, and to preserve and dispose of the Collateral. Metropolitan has not raised a triable issue of fact as to the 2/23/21 site/appraisal charge. *See Malec*, 191 F.R.D. at 584.

For the foregoing reasons, summary judgment is granted in Bancorp's favor on Count I for breach of contract against Metropolitan, including the corresponding damages claimed by Bancorp.

## II.    Hatti Defendants

Bancorp argues that it is entitled to summary judgment against the Hatti Defendants because their affirmative defenses are either waived by the Guarantees or are unavailable as a matter of law. The Hatti Defendants raised three affirmative defenses in their Answer: (1) impairment of collateral; (2) negligent and/or grossly negligent loan administration; and (3) failure to act as a reasonably prudent lender under

SBA Rules and Regulations. Dkt. # 28. Bancorp asserts that all three are expressly waived by the Guarantees.

In responding to Bancorp's Motion for Summary Judgment, the Hatti Defendants did not address any of the affirmative defenses pleaded in their Answer. Instead, they raised a new affirmative defense. They argued that "Bancorp is not entitled to summary judgment as a matter of law because it failed to dispose of the collateral in a commercially reasonable manner." Dkt. # 67, at 2.

Commercial reasonableness is an affirmative defense, *Nat'l Acceptance Co. of Am. v. Wechsler*, 489 F. Supp. 642, 644 n.1 (N.D. Ill. 1980), and affirmative defenses must be raised in a defendant's answer. Fed. R. Civ. P. 8(c). "The purpose of [Rule 8(c)] is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). Affirmative defenses asserted for the first time at summary judgment, "without excuse and without adequate notice to the plaintiff," will generally be deemed forfeited. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478–84 (7th Cir. 2019).

Although district courts have discretion to let defendants amend their answer to assert affirmative defenses not raised at the outset, for example when the relevance of a defense becomes apparent after discovery, the defendant is nonetheless "obligated to act in a timely fashion." *See Reed*, 915 F.3d at 478 (quoting *Venters*, 123 F.3d at 967–68). "Once the availability of an affirmative defense is reasonably apparent, the

22

defendant must alert the parties and the court to his intent to pursue that defense. A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Id*.

The Hatti Defendants "offered no excuse or explanation for failing to plead the defense in [their] answers or for raising the defense so late." *See Reed*, 915 F.3d at 482. Rather, they admitted that they could have raised the commercial reasonableness defense in their answer but did not. *See* Dkt. # 67, at 3 ("[W]hile the Affirmative Defenses may have been labeled as Impairment of Collateral and Negligence or Grossly Negligence [*sic*], it is clear that the extensive and detailed fact allegations in the Affirmative Defenses support an affirmative defense of dispose of [*sic*] collateral in a commercially reasonable manner."). Furthermore, the Hatti Defendants raised the commercial reasonableness affirmative defense after the close of discovery, *i.e.*, when "both parties had already invested a good deal of time and money in the case on the legitimate expectation that they knew what the issues were." *See Reed*, 915 F.3d at 482; *see also* Dkt. # 57 (ordering fact discovery closed by 11/16/2021); Dkt. # 67 (Hatti Defendants' response brief filed 12/22/21). The Hatti Defendants forfeited a commercial reasonableness affirmative defense and we cannot consider it at this stage.

Even if, as the Hatti Defendants argue, the allegations contained in their answer could "support" a defense of failure to dispose of collateral in a commercially reasonable manner, it is not a plaintiff's job to conceive of every possible affirmative

defense that the allegations might "support." Bancorp was "entitled to rely on Rule 8(c) and the [Hatti Defendants'] silence in its pleadings." *See Reed*, 915 F.3d at 482.

Even if the Hatti Defendants could raise their new defense, they have put forth neither facts nor law to support it. As discussed *supra*, because the Hatti Defendants did not file a statement of additional facts, any new facts included in their response brief are not properly before the Court. *See Malec*, 191 F.R.D. at 584 (quoting *Midwest Imports v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)) ("Rule 56.1(b)(3)(B) 'provides the *only* acceptable means of . . . presenting additional facts.' Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court."). Furthermore, the Hatti Defendants cited no case law to show why the manner in which Bancorp disposed of the collateral was commercially unreasonable. *See Crespo v. Calvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Arguments that are unsupported by pertinent authority[] are waived . . . ."); *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 2019 WL 5963644, at *2 (N.D. Ill. 2019) ("Arguments unsupported by applicable case law are deemed waived."). In short, the Hatti Defendants have not raised a triable issue of fact as to whether Bancorp disposed of the collateral reasonably or not.

Because it is improper for the Hatti Defendants to raise a new affirmative defense at summary judgment, and because they did not respond to Bancorp's arguments regarding their other affirmative defenses nor dispute any other aspect of Bancorp's breach of contract claim, summary judgment in Bancorp's favor on Count II (breach of

corporate guaranty against the Hatti Defendants) and Count III (breach of individual guaranty against Harsha Hatti), as well as the corresponding damages asserted by Bancorp, is warranted.

## **CONCLUSION**

For the foregoing reasons, Bancorp's Motion for Summary Judgment (Dkt. # 64) is granted on Counts I, II, and III. Status conference set for 2/21/2023 at 9:50 a.m. It is so ordered.

Dated: 2/7/2023

Charles P. Kocoras
United States District Judge

25